FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL 29 PM 4: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

ANTHONY LEFTRIDGE,                )
                                  )
    Plaintiff,                    )
                                  )   CV-97-P-2305-S
-vs.-                             )
                                  )
ROEBUCK CHRYSLER JEEP,            )
                                  )   ENTERED
    Defendant.                    )

JUL 30 1999

## MEMORANDUM OPINION

The defendant, Roebuck Chrysler Jeep, filed its summary judgment motion on September 14, 1998. The motion was considered at the April 2, 1999 motion docket, without oral argument. The summary judgment motion was taken under submission as of April 2, 1999. For the reasons expressed below, the defendant's motion for summary judgment is due to be granted as to all claims in this Title VII and §1981 race discrimination (termination and terms/conditions) case.

### Facts

Defendant Roebuck Chrysler Jeep ("the Dealership") is an automobile dealership located in Birmingham, Alabama. Terry Spitzer is a co-owner of the business and also serves as president and general manager. Spitzer became acquainted with the plaintiff, Anthony Leftridge, while working at a dealership in Ohio. Sometime in 1995, Leftridge contacted Spitzer to inquire about positions at the Roebuck Dealership. On May 22, 1995, the Dealership hired Leftridge as the dealership's Special Finance Manager, a new position created for Leftridge.

As Special Finance Manager, Leftridge assisted customers with marginal credit ratings in

1

obtaining financing for their automotive purchase. In addition to his special finance duties, Leftridge also assisted other managers and employees when needed.

In early 1996 sales were down at the Dealership. As a result, two managers, Garland and Harris were terminated by Spitzer. According to Spitzer, Harris, who is black, was terminated because he was not a team player. However, Leftridge notes that another manager, Volinski, who is white, was not terminated although his department had performed poorly as well. Spitzer asserts that Volinski was retained because of his loyalty to Spitzer and the Dealership. As a result of the reduction in sales managers, Leftridge took on more sales management responsibility and received a raise.

According to Spitzer, the results achieved by Leftridge in his special finance management position were less than expected. Although Spitzer knew that it would take time to develop the new position, Spitzer claims that he became increasingly displeased with the effort that Leftridge was putting forth. Spitzer says he was particularly unhappy with the fact that Leftridge was frequently away from the Dealership when he should have been working.

The event that resulted in Leftridge's termination relates to the Dealership's policy for missing work. Although the policy is not written, the Dealership's rule for missing work requires that employees personally call the general manager to report their absence. If the general manager is unavailable, the employees must speak to another manager and explain why they will miss work. Leftridge testified that it was his understanding that if he was going to be absent, he was to call the general manager, Volinski, or the office manager, Ron Beaujeaux. According to Spitzer, it is insufficient under the policy to have a spouse or other relative call in to report an absence. Spitzer does not know, however, whether Leftridge was ever informed of this part of the policy.

2

In May 1996, Leftridge began suffering from abdominal pain which required surgery. As Leftridge was unable to attend work as a result of the surgery, he called Volinski on the first day that he missed work to report his absence. The following day, Leftridge says that his wife called Volinski to inform the Dealership that he would be unable to attend work. According to Leftridge, Spitzer called him at home the same day Leftridge's wife called the Dealership or the next day to find out why he wasn't at work. When Leftridge explained his medical condition and the need for surgery, he says Spitzer responded by stating, "While you are off having surgery find another job and get my car back to me in a couple of days."

Spitzer decided to terminate Leftridge after noticing that Leftridge was absent from a Dealership meeting on May 18, 1999. When Spitzer asked Volinski, the general manager, if he knew why Leftridge was not at the meeting, Volinski told Spitzer that Leftridge had not shown up for work for two days and had failed to call in to report his absence.[1] After consulting with Office Manager Ron Beaujeaux and Finance Manager Van Ogborn about Leftridge's whereabouts and learning that they had not heard from Leftridge, Spitzer decided to terminate him. Leftridge was replaced by a black employee.

Despite being replaced by a black employee, Leftridge claims that he was terminated because of his race. Leftridge asserts that other non-black employees were treated differently under similar circumstances. The two comparators cited by Leftridge are Ron Beaujeaux and Jeff Roden. Roden was terminated for not calling in to report his absence. However, Roden was re-hired a year later after completing a drug rehabilitation program. Beaujeaux missed work for an extended period of

---

[1] Volinski denies any knowledge of Leftridge's illness. He does admit that Leftridge's wife had called in to report her husband's absence on a prior occasion, but does not believe that it was in May 1996.

3

time for surgery. While Beaujeaux did miss work for the procedure, the Dealership asserts that Beaujeaux's absence was scheduled in advance and approved by his supervisor.

Leftridge also claims that he and other black employees were treated differently because of their race with regard to company outings, incentive, and bonuses. Leftridge filed an EEOC charge and this lawsuit asserting claims for race discrimination under Title VII and § 1981.

### Analysis

### I. Race Discrimination (termination for violation of work rule)[2]

In order to survive summary judgment, a plaintiff in a race discrimination case must present a prima facie case under the familiar burden-shifting analysis of McDonnell Douglas and its progeny. See 411 U.S. 792 (1973). In this case, Leftridge asserts that he was terminated for violation of a work rule that was discriminatorily applied. As such, Leftridge must show that: (1) he was a member of a protected class, (2) he engaged in conduct similar to that of a person outside the protected class, and (3) the discipline imposed on him was more severe than that imposed on the person outside the protected class. See Jones v. Gerwen, 874 F.2d 1534, 1540 (11th Cir. 1989). Alternatively, because this is a violation of a work rule case, a plaintiff may show that he did not violate the work rule in lieu of the second and third elements above. Id.

In this case, Leftridge attempts to prove intentional race discrimination by using both of the above methods. In support of the first method, Leftridge asserts that two white employees who missed work and did not call-in were treated more favorably than he. Furthermore, as to the second method, Leftridge asserts that (1) the call-in policy was not written, (2) his wife called in to report

---

[2]The plaintiff asserts violations of Title VII and § 1981.

4

his absence, and (3) he and his wife spoke to Volinski, the general manager. A determination as to whether or not Leftridge actually violated the work rule, however, is not necessary in this case. Because the Dealership articulated a legitimate, non-discriminatory reason for firing Leftridge - - Spitzer believed that Leftridge had failed to call in and report his absence for several days - - the court is not forced to determine the validity of Leftridge's claim of innocence. "[W]here an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation," the guilt or innocence of the plaintiff in of no consequence. Id. at 1540. Even if the employer's belief was incorrect, as long as the employer had a good faith belief that the employee violated a work rule or policy, the employer is not guilty of racial discrimination.[3] See Turner v. Texas Instruments, Inc. 555 F.2d 1251, 1256 (5th Cir. 1977). Here, Leftridge has not shown that the Dealership's legitimate, non-discriminatory reason for firing him was pretext for discrimination. The evidence shows that Spitzer consulted with at least three of his managers in an effort to find out where the plaintiff was and why he missed work. Based on the information he received from his managers - - that Leftridge had not called in to explain his absence - - Spitzer, already apparently unsatisfied with Leftridge's performance, decided to terminate his employment. Whether Leftridge actually did or did not report his absences is not a determinative factor where there is no evidence to show that the defendant's articulated reasons were pretext for discrimination.[4]

---

[3] It is also important to note that Spitzer was the person who hired and ultimately fired Leftridge. While this fact is not determinative in favor of the defendants, it makes the plaintiff's case more difficult to maintain. See Van Meter v. Jefferson Smurfitt Corp., 1196 WL 640432, at *10 (N.D. Ga. Aug. 26, 1996) (citing Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991)).

[4] It is also notable that the same person who hired Leftridge - - Spitzer - - also fired Leftridge. The defendant also cites to the fact that Spitzer adopted two black children in support

5

Leftridge also refers to two white comparators in support of his prima facie case. However, Leftridge's reliance on these two employees is without merit. First, Roden, who apparently missed work without calling in, was in fact terminated for violating the work policy. Although the plaintiff asserts that Roden is a valid comparator because he was re-hired after completing drug rehabilitation, the re-hiring did not occur until well after his initial termination. While Leftridge tries to compare the re-hiring of Roden after completing a drug rehabilitation program to his own attempt to re-gain his employment *the day after he was fired,* such a comparison is irrelevant because the situations are not "nearly identical."

As to the second comparator, Beaujeaux, the defendant has presented evidence that Beaujeaux requested and was approved for medical leave well in advance of missing work. The plaintiff has not presented any evidence to show that Beaujeaux was similarly situated and treated differently. It is Leftridge's burden to show that the situations were substantially similar and Leftridge has failed to satisfy this burden.[5]

Leftridge has failed to show that the defendants' articulated reasons were pretext for discrimination. Indeed, Leftridge has produced no evidence of racial discrimination with regard to his termination. Rather, the defendants have shown that Spitzer not only agreed to hire Leftridge, but he also created a new position for him in his company. Furthermore, after Spitzer terminated

---

of their case that Spitzer did not discriminate against the plaintiff because of his race.

[5] Although the court need not present any further reasons for granting the defendant's summary judgment, one final aspect of the plaintiff's case seems ripe for comment. To the extent that the plaintiff has intended to assert a claim for termination due to race (as differentiated from the discriminatory treatment with regard to discipline) the court finds that the plaintiff has not presented a prima facie case of discrimination. The person hired to replace the plaintiff was also black. Therefore, the plaintiff is unable to satisfy the elements of a prima facie case of discriminatory termination.

6

Leftridge for failing to follow the dealership's rules (whether this was a correct belief or not), Spitzer replaced Leftridge with a black male. Based on the foregoing evidence, Leftridge has simply failed to meet his burden under McDonnell Douglas. The defendants' summary judgment motion is due to be granted as to this claim.

II. Race Discrimination (terms and conditions)

Leftridge also makes an additional claim for discrimination with regard to the terms and conditions at the dealership. The complaint states that Leftridge "experienced and witnessed black employees receiving disparate treatment such as black[sic] were excluded from company outings and other incentives and bonuses." (Complaint ¶ 9). More specifically, Leftridge says he was not invited to golf outings and dinners. However, in his deposition, Leftridge admits that he does not play golf and does not know if the "outings" were company sponsored or merely social gatherings among friends. In response, Spitzer testified that participation in the golf games and dinners was based on friendship.

With regard to the alleged "bonuses" that Leftridge asserts he was denied because of his race, the claim is entirely unsupported. In his deposition, Leftridge was unable to provide any examples of bonuses or incentives that he was denied. There is simply no evidence in the record to support this claim.

Leftridge has failed to provide any evidence of discriminatory animus as to these claims. Therefore, the defendants' motion for summary judgment is due to be granted.

7

## Conclusion

For the foregoing reasons, the defendants' summary judgment motion is due to be granted in full.

Date: _July 29_, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Greg O. Wiggins
    Kyle T. Smith
    Kurt N. Peterson
    Edwin O. Rogers
    Robert Lippitt